Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, March 10, 2008 8:14:19 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| THOMAS SHERIDAN LINN ) | Case No. 07-1593 |
| ) | |
| Debtor. ) | Chapter 13 |

### MEMORANDUM OPINION

The Chapter 13 trustee (the "Trustee") objects to the confirmation of the Chapter 13 plan proposed by Thomas Sheridan Linn (the "Debtor") on the basis that the plan fails to commit all his disposable income to the plan to the payment of unsecured creditors, as required by 11 U.S.C. § 1325(b). The Debtor's current monthly income is below the State's applicable median income. The Trustee argues that the Debtor has disposable income of $926, which is derived by deducting the Debtor's Schedule J expenses from his current monthly income as stated on Part I of Form B22C.

On the other hand, the Debtor argues that his actual, net monthly income on Schedule I is $1,548, and that after deducting his Schedule J expense of $1,245, he only has $303 of disposable income to pay to his unsecured creditors in a Chapter 13 plan. Requiring the Debtor to pay $926 per month would render the Debtor's plan infeasible. Nevertheless, the Trustee believes that this is the result required by two of the court's earlier opinions, *In re Waters*, No. 07-459, 2008 Bankr. LEXIS 225 (Bankr. N.D.W. Va. Jan. 24, 2008), and *In re Simms*, No. 06-1206, 2008 Bankr. LEXIS 224 (Bankr. N.D.W. Va. Jan. 23. 2008), and the Trustee seeks clarification of the applicability of those two case as to the Debtor's circumstances.

### I. BACKGROUND

The Debtor, a single male, earns income doing drywall and painting work. His working hours vary

1

from week to week, but in the six months preceding his bankruptcy petition, his gross monthly income averaged $2,171. According to Schedule I, the Debtor had a gross monthly income at the time of his December 7, 2007 bankruptcy petition of $1,942, payroll deductions of $394, and a net monthly pay of $1,548. The Trustee neither disputes the accuracy of the Debtor's Form B22C nor the Debtor's Schedules. At the February 29, 2008 hearing in this case, Debtor's counsel stated that the Debtor's work is tied to the health of the housing market, and the Debtor forecasts that his earnings may decrease in the future as a result of fewer projects and less overtime. The Trustee did not contradict counsel's statements that the Debtor's earnings in the future would be less than the Debtor's earnings in the six months preceding his bankruptcy petition.

The Debtor's Schedule J expenses are very modest. He has no rent or home mortgage expense, and no automobile installment payments. In fact, the Debtor has no secured debts. The Debtor drives a 1995 Ford F-150 that already has 170,000 miles of wear. On Schedule F, the Debtor lists his unsecured debts at $62,401, most of which are owed to various credit card companies. Most of the Debtor's unsecured debts were incurred over a thirteen year period for the purpose of paying household expenses. Debtor's counsel states that the only reason the Debtor elected to file a Chapter 13 case was because he had an earnest desire to repay what he is able to his creditors.

## II. DISCUSSION

In *Simms*, 2008 Bankr. LEXIS 224 at *38, this court held that the amount of disposable income under 11 U.S.C. § 1325(b) that an above the median debtor was required to pay to unsecured creditors is determined with reference to Form B22C, which implements the disposable income test under § 1325(b)(2); disposable income was not to be determined with reference to Schedules I and J, as was the case before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 95-598 ("BAPCPA"). Importantly, in *Simms*, the debtor had ample income to make the plan payment required under Form B22C, and the feasibility of the debtor's plan was not an issue. *Id.* at *39 n.5.

Concomitantly with *Simms*, the court issued its memorandum opinion in *Waters*, 2008 Bankr. LEXIS 225. The debtor in *Waters* had earnings that fell below the median income, and the court held that, in calculating the debtor's disposable income for purposes of 11 U.S.C. § 1325(b)(2), the proper method

was to deduct the debtor's expenses from her "current monthly income," as defined by § 101(10A), and as determined on Part I of Form B22C. *Id.* at *14-28. Amounts reasoanble and necessary to be expended by a below the median income debtor is determined with reference to the debtor's list of expenses of Schedule J. *Id.* at *15. In *Waters*, the debtor was unemployed for five of the six months preceding her bankruptcy petition, and regarding the determination of the debtor's "current monthly income," which is a six month historical average, the court stated:

> In enacting a definition of "current monthly income" that encompasses the average monthly income of the debtor in the six months preceding the filing of the bankruptcy petition, Congress apparently meant to take into consideration temporary income variations. For example, a seasonal worker may have a high income in the summer and fall of the year, but little or no income in the winter months. Taking the previous six months of earnings into consideration may provide for a more realistic picture of that debtor's income. In this case, the Debtor also experienced significant variations in her income in the six months preceding her bankruptcy petition. She only worked for one of the six months preceding her bankruptcy petition due to medical reasons. While the application of the "current monthly income" formula may be unwise with respect to the Debtor, the court cannot say that the application of the formula is absurd inasmuch as it uses a debtor's past behavior to predict future events. In casting its net of uniform standards, Congress made the disposable income test mandatory – it is neither a floor nor a ceiling – and it therefore must have expected that some debtors with historically low monthly incomes would be advantaged by the implemented system. Indeed, application of the uniform standards in this case may fulfill Congress's apparent purpose. In her Amended Schedule I, the Debtor already claimed some reduction in her monthly wages, and future events may well require the Debtor to take more time off work for medical reasons. Moreover, the plan proposed by the Debtor is likely to be feasible pursuant to 11 U.S.C. § 1325(a)(6), so the results of this case are not absurd inasmuch as the Debtor is not prevented from confirming a Chapter 13 plan based on feasibility.

*Id.* at *26-27.

Accordingly, based on the court's holdings in *Simms* and *Waters*, the Trustee seeks to use the Debtor's current monthly income as stated on Part I of Form B22C, $2,171, and deduct from that amount the Debtor's expenses on Schedule J, $1,245, which leaves $926 to pay unsecured creditors. Of course, a debtor's payroll expenses are listed on Schedule I, and those too must be deducted from a debtor's current monthly income as a reasonable and necessary expenses. 11 U.S.C. § 1325(b)(2)(A)(i). The Debtor's monthly payroll deduction is $393, which, when added to the Debtor's expenses listed on

3

Schedule J, would make the Debtor's § 1325(b) disposable monthly income $533. Thus, as required by the court's holdings in *Simms* and *Waters*, $533 is the amount of disposable income that the Debtor must pay on a monthly basis to his unsecured creditors to satisfy the Trustee's disposable income objection under § 1325(b).

What sets this case apart from *Simms* and *Waters* however, is that application of the disposable income test renders the Debtor's plan infeasible pursuant to § 1325(a)(6),[1] and, therefore, the court cannot confirm a Chapter 13 plan that complies with the application of § 1325(b)'s disposable income test. Disposable income under § 1325(b) is only one test for confirmation, nine others exist under § 1325(a). Confusion with regard to the interaction of the disposable income test and the feasability requirement is understandable. Before the enactment of BAPCPA, the disposable income test of § 1325(b) and the feasibility requirement of § 1325(a)(6) dovetailed nicely. In short, disposable income was determined by analyzing Schedules I and J to determine what expenses a debtor should reasonably be allowed to deduct from the debtor's income and the result was the amount of disposable income that a debtor could feasibly commit to the repayment of the debtor's unsecured creditors. Now that § 1325(b) determinations are "based on a sort of parallel universe, which sometimes has little or nothing to do with [a debtor's] actual situation," *In re Gress*, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006), dovetailing the two requirements is akin to fitting a square peg in a round hole. Feasability and disposable income are now wholly independent considerations for confirmation of a Chapter 13 plan.

In this case, after paying for his reasonable and necessary expenses, the Debtor simply does not have enough money to make the plan payments required by § 1325(b). The Debtor's actual disposable income, as stated on Schedules I and J is $303 per month. The Trustee has accepted the Debtor's estimation of his actual income and expenses as accurate. The Debtor cannot pay the $533 mandated by § 1325(b). *See, e.g.*, *In re Soost*, 290 B.R. 116, 131 (Bankr. D. Minn. 2003) ("In the case of a plan funded by a debtor's future income, as nearly all of them are, this is a straightforward factual inquiry: is it more likely than not that the debtor will generate enough disposable income over the term of the plan to

---

[1] Section 1325(a)(6) requires that, as a condition to confirmation, the court determine that "the debtor will be able to make all payments under the plan and to comply with the plan."

4

meet his payment obligations?"); *In re Ross*, 231 B.R. 635, 639 (Bankr. S.D. Ohio 1999) (stating that the feasability requirement "requires debtors to establish and courts to find, considering all the circumstances, that there is a reasonable likelihood of success of plan completion, and that debtors will be able to comply with all plan terms.").

Accordingly, the Debtor cannot confirm a plan that pays $303 per month in light of the Trustee's 11 U.S.C. § 1325(b) disposable income objection, and cannot confirm a plan that pays $533 a month, as required by § 1325(b), because the Debtor simply does not have the funds to make that payment on a monthly basis.

Moreover, the main reason that the Debtor desires to be in Chapter 13 is to fulfill the laudable, responsible goal of repaying his creditors – but for this fact the Debtor's counsel stated that the case would be in Chapter 7, where his creditors would be not be paid anything. All parties, the Debtor, the Trustee, and the Debtor's creditors benefit by allowing this case to proceed in Chapter 13. Consequently, the results of adhering to § 1325(b) disposable income test in this case is more than unwise, it is absurd and therefore should not be followed. *E.g.*, *United States v. X-Citement Video*, 513 U.S. 64, 69 (1994) (refusing to assume that Congress, in passing laws, intended results that are absurd); *eCAST Settlement Corp. v. Vaughn (In re Vaughn)*, 2007 Bankr. LEXIS 4227 at *22 ("[T]here will be instances in which the use of this formula will produce an absurd result . . . ."); *In re Edmondson*, 363 B.R. 212, 217-18 (Bankr. D.N.M. 2007) ("[I]t makes no sense to require that debtor to propose a plan payment which would be impossible for the debtor to make given the debtor's current income situation. In other words, strict adherence to Form B22C will result in absurd and illogical results . . . ."); 73 Am. Jur. 2d *Statutes* §§ 172, 173 (2007) (stating that "a court will not give a statute a literal interpretation if it leads to absurd consequences that are contrary to legislative intent," but noting that "it is the duty of the courts to interpret a statute as they find it, without reference to whether its provisions are wise or unwise . . . ."). Forcing debtors into Chapter 7 instead of Chapter 13 would also seem to be at odds with BAPCPA's new abuse provisions in 11 U.S.C. § 707(b), which aims to push more debtors into Chapter 13. *See also* Press Release, White House Press Office, *President Signs Bankruptcy Abuse Prevention, Consumer Protection Act* (Apr. 20, 2005), available at http://www.whitehouse.gov/news/releases/2005/04/20050420-5-html ("In recent years, too many people

5

have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them. . . . The bill I sign today helps address this problem. Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts.").

In sum, the court will not follow the results mandated by 11 U.S.C. § 1325(b) when doing so would render a debtor's plan infeasible.[2]

### III. CONCLUSION

For the above stated reasons, the court will overrule the Trustee's objection to confirmation of the Debtor's Chapter 13 plan. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

---

[2] To assist the Trustee and members of the local bar understand the meaning of the court's holdings respecting the applicability of § 1325(b)'s disposable income test in this District, as determined in *Simms*, *Waters*, and in this case, the court summarizes the following four principles by which it will be measuring future cases:

    A.    Disposable income for an above the median income debtor is determined pursuant to Form B22C, which calculates a debtor's "current monthly income," and deducts from that amount the expenses as determined in accordance with subparagraphs (A) and (B) of section 707(b)(2).

    B.    Disposable income for a below the median income debtor is determined by calculating the debtor's "current monthly income" and deducting from that amount the debtor's reasonable and necessary expenses listed on Schedule J, including certain payroll deductions listed on Schedule I. As under the prior law, the court has discretion to determine what constitutes a reasonable and necessary expense.

    C.    When the calculation of a debtor's "current monthly income" (a six-month historical average) is less than the debtor's actual monthly income as of the date of filing, as for example, when the debtor obtained new employment shortly before filing, the determination of disposable income in either paragraph (A) or (B), *supra*, is unchanged.

    D.    When the calculation of a debtor's "current monthly income" (a six-month historical average) is greater than the debtor's actual monthly income, as for example, when a debtor loses a job shortly before filing, and the result of the disposable income calculation renders the Chapter 13 plan infeasible, the result mandated by § 1325(b) will not be followed. Lacking a useable disposable income test under § 1325(b), the court will determine the extent of a debtor's disposable income by examining Schedules I and J, pursuant to the requirement of § 1325(a)(3) that the Debtor propose a plan in good faith.

The court believes that these four principles are the best way to give effect to the changes to the disposable income test rendered by BAPCPA while still maintaining a Chapter 13 practice that bears some semblance to reality.

7